1  Joshua D. Kienitz, Bar No. 244903
   jkienitz@littler.com
2  LITTLER MENDELSON, P.C.
   Treat Towers
3  1255 Treat Boulevard
   Suite 600
4  Walnut Creek, California 94597
   Telephone:  925.932.2468
5  Fax No.:     925.946.9809

6  Heather Lanyi, Bar No. 341790
   hlanyi@littler.com
7  LITTLER MENDELSON, P.C.
   333 Bush Street
8  34th Floor
   San Francisco, California 94104
9  Telephone:  415.433.1940
   Fax No.:     415.399.8490

10

11 Attorneys for Defendant
   PERFORMANCE MECHANICAL, INC.

12

13            UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15

| | |
|---|---|
| 16 JUSTIN WOLFGANG DUBERKKE, individually, and on behalf of all others similarly situated, | Case No. |
| 17 | **DEFENDANT PERFORMANCE MECHANICAL, INC.'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT** |
| 18 Plaintiff, | |
| 19 v. | |
| 20 PERFORMANCE MECHANICAL, INC., a California corporation; and DOES 1 through 10, inclusive, | [Los Angeles Court Case No. 22STCV30862] |
| 21 | |
| 22 Defendant. | |

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4886-4697-0937.7 / 087584-1011

DEFENDANT'S NOTICE OF
REMOVAL TO FEDERAL COURT

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1331, 1441(a) and 1446, Defendant PERFORMANCE MECHANICAL, INC. ("Defendant" or "PMI") removes the above-captioned action from the Superior Court of the State of California, County of Los Angeles to the United States District Court, Central District of California. Removal is proper based on 29 U.S.C. § 185(a). This action is removed pursuant to the procedures found in 28 U.S.C. §§ 1441 and 1446, and removal jurisdiction is based on 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1446(d), Defendant will also file a copy of this Notice of Removal with the Los Angeles Superior Court.

## I.  PROCEDURAL BACKGROUND

On September 21, 2022, Plaintiff Justin Wolfgang Dubberke ("Plaintiff") filed a Complaint in the Superior Court of the State of California, County of Los Angeles, which is captioned as follows: <u>Justin Wolfgang Dubberke, individually, and on behalf of others similarly situated, v. Performance Mechanical, Inc., and Does 1 through 10,</u> Case No. 22STCV30862. ("Complaint" or "Compl."). The Complaint contains eight causes of action, alleging: (1) Failure to Pay Minimum Wages (Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197); (2) Failure to Pay Overtime Compensation (Cal. Lab. Code §§ 1194 and 1198); (3) Failure to Provide Meal Periods (Cal. Lab. Code §§ 226.7 and 512); (4) Failure to Authorize and Permit Rest Breaks (Cal. Lab. Code § 226.7); (5) Failure to Indemnify Necessary Business Expenses (Cal. Lab. Code § 2802); (6) Failure to Timely Pay Final Wages at Termination (Cal. Lab. Code §§ 201 – 203); (7) Failure to Provide Accurate Itemized Wage Statements (Cal. Lab. Code § 226); and (8) Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200, *et seq*.).

True and correct copies of the Summons, Complaint and Proof(s) of Service are attached to the supporting Declaration of Joshua D. Kienitz ["Kienitz Decl."] as **Exhibit**

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO FEDERAL COURT

2

**1**.  All other filings, orders and/or papers in the superior court action, to Defendant's knowledge, are attached to Kienitz Decl. as **Exhibit 2**.

On October 10, 2022, Plaintiff's counsel agreed to a 15-day extension for Defendant to respond to Plaintiff's Complaint.  (Kienitz Decl., ¶ 5 & **Exhibit 3**.)  As its responsive pleading, Defendant intends to file a motion to dismiss under Rule 12(b)(1), (3) and (6), within the timeline resulting from FRCP 81(c)(2)(C) and the above-referenced 15-day extension, after first exhausting the meet and confer process as required by C.D. Cal. L.R. 7-3.

As of the date of this Notice of Removal, no other parties have been named or served with the Summons and Complaint, to Defendant's knowledge.

## II.   REMOVAL JURISDICTION

This Court has jurisdiction because a federal question exists under Section 301 of the Labor Management Relations Act ("LMRA"), which provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this [Act], or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  29 U.S.C. § 185(a) (hereinafter, "Section 301").

Section 301 preemption and jurisdiction apply because the Complaint includes claims that can only be brought as contractual claims under a collective bargaining agreement ("CBA"), because of the application of several express CBA exemptions in the Labor Code and Industrial Welfare Commission ("IWC") Wage Order 16.  Section 301 also applies because Plaintiff asserts he is entitled to relief which is controlled by the CBA and makes claims the resolution of which require interpretation of the CBA.

If any claims in the Complaint are not preempted by Section 301, the entire action is still removable under 28 U.S.C. § 1441(c) because this Court has supplemental

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT                    3

jurisdiction under 28 U.S.C. § 1367. All claims in the Complaint are sufficiently related to form part of the same case or controversy.

## III. REMOVAL PROCEDURE

### A. Venue Is Proper in This District.

Plaintiff filed this action in the Superior Court of California, County of Los Angeles. Therefore, pursuant to 28 U.S.C. §§ 84(a), 1391, and 1441(a), venue properly lies in the United States District Court for the Central District of California.

### B. This Removal Is Timely Made Within Thirty Days of Service of the Complaint.

Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely because Defendant filed it within thirty (30) days after the service of the Summons and Complaint filed in the State Court Action. Service occurred on September 29, 2022. This Notice of Removal is timely filed within thirty (30) days thereafter. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48, 354 (1999).

### C. The Parties

Since 2007, PMI has been a member of the Association of Construction Workers ("ACE"). (Declaration of Dimitri Hrovat ["Hrovat Decl."], ¶ 4; Defendant's Request for Judicial Notice ["RJN"] at ¶ 1.) ACE, its members (including PMI), and the Southwest Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America (the "Union") have, at all relevant times, been parties to a CBA. (Hrovat Decl., ¶ 4.)

For the entirety of his employment from November 2021 to March 2022, Plaintiff was employed by PMI in a position in the bargaining unit represented by the Union. (*Id.* at ¶ 6.) A true and correct copy of the CBA in effect during Plaintiff's employment, and applicable to Plaintiff's employment, is attached to the Hrovat Decl. as **Exhibit A.** (*See also* RJN at ¶ 2.) While the CBA has been extended and continues in full force today (Hrovat Decl., ¶ 3), the version of the CBA included herewith is the one in effect during Plaintiff's employment.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT

4

1   Defendant is a corporation engaged in an industry affecting commerce within the

2   meaning of the National Labor Relations Act (the "NLRA").  29 U.S.C. §§ 152(2), (6),

3   (7), and 185(a).  The Union is a labor organization under the NLRA and the LMRA.  29

4   U.S.C. §§ 152(5) and 185(a).

## IV.   FACTUAL BACKGROUND

### A.   Plaintiff's Employment

Defendant employed Plaintiff as a Millwright Foreman from November 2021 until March 2022.  (Compl. at ¶ 13; [Hrovat Decl., ¶ 3].)  In this position, and throughout his entire employment with Defendant, Plaintiff was a member of a bargaining unit represented by the Union.  (Hrovat Decl., ¶ 3.; *see also* Exh. A at Appendix B, p. 66 [Millwright Local 1607 is one of the local unions that is part of the Union that is signatory to the CBA].)  Therefore, Plaintiff's employment was governed by the CBA.

Further, Plaintiff, like all other workers covered by the CBA, was employed in a construction occupation.  (*See* CBA, Sections 102.5.1, 102.5.2, 102.5.3, etc. [listing types of construction work covered by the CBA]; CBA, Appendix B, Section 2 [re Millwright scope of work]; CBA, Section 904 [IWC Wage Order 16, which applies to construction work, applies to employees covered by the CBA]; Hrovat Decl., Exh. A, pp. 4, 23, 66.)

Plaintiff earned a base hourly rate in excess of $50.00 per hour under the CBA, at all times during his employment with PMI.  (Hrovat Decl., ¶ 5.)

### B.   Relevant Collective Bargaining Agreement Provisions

The term of the CBA in effect during Plaintiff's employment was July 1, 2016, to June 30, 2022.  (Hrovat Decl., ¶¶ 3, 4; **Exhibit A**.)  The provisions of the CBA relevant to this Removal include the following:

#### 1.   <u>Wage Rates and Overtime</u>

**ARTICLE XVI, Section 1602.3**  All time worked before 5:00 a.m. and after 5:00 p.m., or all time worked in excess of eight (8) consecutive hours, exclusive of meal period, and all

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT

5

work performed or hours paid on Saturdays (except as provided in paragraph 1608.3), Sundays and holidays, shall be paid at the appropriate overtime rate … If an employee resumes work on a new shift or a new starting time within twelve (12) hours of the end of the prior shift, such work shall be paid at the appropriate overtime rate.

(*Id.* at **Exhibit A**, pp. 28-29 at § 1602.3.)

> **ARTICLE XVIII, Section 1805.**   Overtime Rates: All overtime Monday through Friday shall be at the rate of one and one-half (1 ½) the regular straight time hourly rate for the first four hours of overtime worked and shall be paid at double the straight time hourly rate after twelve hours of work. Saturday, unless it is a makeup day, shall be at the rate of one and one-half (1 ½) times the straight time rate for the first eight (8) hours of work and double (2) the straight time hourly rate after eight hours of work.  All hours worked on Sundays and Holidays shall be paid at double the straight time hourly rate.

(*Id.* at **Exhibit A**, p. 42 at § 1805.)

> **ARTICLE XVIII, Section 1801.**  Effective July 1, 2016, all foremen not herein separately classified shall be paid not less than $3.00 per hour more than the hourly rate of the highest Carpenters classification listed below over which they have responsibility ... The following Hourly Wage Rates shall apply [7/1/2016]:
> […]
> Millwright                          $40.90
> […]
> Negotiated Increases:

| | |
|---|---|
| July 1, 2017 | $2.00 to be allocated by the Union. |
| July 1, 2018 | $2.20 to be allocated by the Union. |
| July 1, 2019 | $2.30 to be allocated by the Union. |
| July 1, 2020 | $2.00 to be allocated by the Union. |
| July 1, 2021 | $2.00 to be allocated by the Union. |

(*Id.* at **Exhibit A**, p. 35 at § 1801.)

///

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT

6

**APPENDIX B SPECIAL WORKING RULES FOR MILLWRIGHTS, Section 6. Foreman:**

(d)  Millwright foremen assigned responsibility over one (1) or more Millwright foremen shall receive three dollars ($3.00) per hour more than the foreman's pay and shall be called general foreman.  Millwright foremen or general foremen, as defined above, shall receive three dollars ($3.00) per hour more than the highest paid employee he directly and continuously supervises for at least one (1) full shift.

(*Id.* at **Exhibit A**, p. 71 at § 6.)

    2.    <u>**Meal and Rest Breaks**</u>

**ARTICLE IX, Section 903.  Meal Period** Employees shall not work more than five (5) consecutive hours without a one-half (1/2) hour meal period.  When employees work over five (5) hours without being provided with a one-half (1/2) hour meal period, they shall be paid an additional amount equal to one-half (1/2) hour pay at the double (2) time rate excluding fringe benefits.  When an employee is required to work overtime for more than three (3) hours over the regular eight (8) hours, the Employer agrees to provide a meal period each five (5) hours thereafter and the employee shall have sufficient time to eat the meal without loss of pay.  In the event an employee is required to work through an overtime meal period, then the employee shall receive pay for an additional one-half (1/2) hour at the double (2) time rate excluding fringe benefits.  Meal periods may be staggered to meet job requirements.  No employee will be required to work more than five (5) hours during any time period without a meal period.

(*Id.* at **Exhibit A**, p. 23 at § 903.)

**ARTICLE IX, Section 904.**  The parties recognize the applicability of Industrial Welfare Commission Wage Order 16 to work performed under this Agreement. [...]

(*Id.* at **Exhibit A** p. 23 at § 904.)

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT

**3.**     **Grievance and Arbitration**

**ARTICLE VI, Section 601.4**   The Contractor and the Union agree to submit all disputes, excluding jurisdictional disputes, concerning the interpretation or application of the Agreement to arbitration under this Article VI. [...]

(*Id.* at **Exhibit A**, p. 17 at § 601.4.)

**ARTICLE VI, Section 601.5**   The Construction Employers Contract Administration Trust Fund shall pay the costs associated with any grievance filed pursuant to this Article VI.

(*Id.* at **Exhibit A**, p. 18 at § 601.5.)

**ARTICLE IX, Section 904.**  [...] Any alleged violation of Wage Order 16 shall constitute a grievance which shall be recognized under the grievance procedure of this Agreement. The grievance procedure detailed in Article VI shall be the exclusive method for resolving all alleged violations of Wage Order 16 and the time limitations of the grievance procedure shall apply to the extent permitted by applicable local, state or federal law. Nothing in the Agreement shall be construed to limit the relief that an arbitrator deems appropriate.

(*Id.* at **Exhibit A** p. 23 at § 904.)

**APPENDIX M GRIEVANCE OF DISPUTES**  [...]  The Parties to this Agreement recognize that arbitration pursuant to the grievance procedure affords numerous benefits including expedited resolution of disputes; reduced cost and expense as compared to litigation; potentially greater monetary relief to individual employees; benefit of the arbitrator's knowledge and expertise with the bargaining parties, the employment relationships governed by the collective bargaining agreement, and the practices of the construction industry; less restrictive rules of evidence; and less formal procedures. [...] It is therefore the intent of the parties that this grievance procedure provide a mechanism for resolving the individual claims covered herein which balances expedited and complete relief to employees for violations with avoidance of unnecessary costs and

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4886-4697-0937.7 / 083931.1034

NOTICE OF REMOVAL TO
FEDERAL COURT                    8

disproportionate remedies associated with class and representative actions.

[...]

Any dispute, complaint or grievance alleging a violation of the Master Labor Agreement shall be processed through the Procedure for Settlement of Grievance and Disputes in Article VI, and the Local Union and Union shall retain sole and exclusive ability to bring such a grievance to arbitration pursuant such Article.

(*Id.* at **Exhibit A**, pp. 115-16.)

4.    **Timing and Method of Wage Payment**

**ARTICLE IX, Section 902.  Payment of Wages**

**902.1**  All wages shall be paid on a designated weekly payday and in no event shall the Contractor withhold more than five (5) working days. If the regular payday falls on a holiday, the employees shall be paid on the next regular workday. Employees shall be paid prior to the ending of their regular shift. In the event an employee is not paid prior to the ending of his regular scheduled shift, he shall be compensated in increments of one-half(½) hour at the applicable overtime rate until such time as he does receive his pay. Contractors may pay employees utilizing direct deposit or payroll debit card as provided under local, state or federal law, provided, however, that payroll debit cards will be without fees charged to employees or deduction of wages to employees.

(*Id.* at **Exhibit A**, p. 22 at § 902.1.)

**ARTICLE IX, Section 902.2**  When men are laid off or discharged, they must be paid wages due them at the time of layoff or discharge ... At such times as an employee is paid, he shall be furnished a personal record showing straight time and overtime hours paid and all deductions itemized for the current pay period.  Such record shall show the employees names or social security number and the Employer's name and address.   If the Contractor fails to provide such information on the check stub, then upon written notice from the Union, the Contractor shall correct such check stub within

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT                         9

ten (10) days after such notice.  If after a second notice such correction is not made, then the Contractor shall be liable to the employee in the amount of ten dollars ($10.00) for each day that the Employer fails to correct the check stub.  In the event the Employer fails to pay employees laid off or discharged, they shall be paid waiting time at the straight time rate of eight (8) hours per day, five (5) days per week, until the time such payment has been made.

(*Id.* at **Exhibit A**, p. 22 at § 902.2.)

      **ARTICLE IX, Section 902.3**  An employee who quits shall be mailed his pay in full by certified mail to his last known address within seventy-two (72) hours, or be paid prior to leaving the job or project.  In the event these stipulations are not met, he shall receive waiting time as noted above.

(*Id.* at **Exhibit A**, p. 22 at § 902.3.)

     **5.**    **Non-Exhaustive List Of CBA Provisions Governing Other Terms and Conditions of Employment**

      **ARTICLE X, Section 1002.  Parking** … If employees must be bused to a jobsite they will be paid for the time spent riding to the jobsite.  If the return trip takes more than one half (1/2) hour, the return trip will also be paid.

(*Id.* at **Exhibit A**, p. 24 at § 1002.)

      **ARTICLE XVI, Section 1608.   Show Up Pay.** Any workman or employee reporting to work at the regular starting time and for whom no work is provided, shall receive pay for two (2) hours at the stipulated rate ...; and any workman or employee who reports for work and for whom work is provided shall receive not less than four (4) hours of pay at the straight time hourly rate[.]

(*Id.* at **Exhibit A**, p. 30 at § 1608.)

      **ARTICLE XVI, Section 1615.**  Carpenters, apprentices and pre-apprentices shall furnish their own tools, but shall not furnish, rent or lease saw horses, ladders, mitre boxes, electric

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT

10

drills, automotive equipment to be used for the purpose of hauling or delivering individual Employers material or equipment, or any kind of power, cordless, or battery operated machines or saws.  Each employee shall arrive on the job with tools in proper conditions.  To implement this Section, the individual Carpenter shall provide a tool box with a lock.

(*Id.* at **Exhibit A**, pp. 32-33 at § 1615.)

**ARTICLE XVI, Section 1615.1**.  The individual Employer shall provide a secure place on each jobsite where his employees may keep their tools.  If all or any part of the employees tools are lost by reason of failure of the individual Employer to provide such a secure place, or by fire, flood, or theft involving unlawful entry while in the secure place …, the individual Employer shall reimburse such employee for any such loss.  The employee suffering said loss shall report the loss during his next working day and the Contractor shall acknowledge liability or reject the claim within two (2) working days after report of the loss or claims.  Disputes arising from this Section shall be submitted to the grievance procedure as outlined in Article IV of this Agreement, if applicable.

(*Id.* at **Exhibit A**, p. 33 at § 1615.1.)

**ARTICLE XVI, Section 1618**.  The Contractor will furnish for the use of his employees any necessary waterproof or foul weather gear, safety helmets, or any other necessary protective clothing as required by CAL-OSHA or the Contractor.  Employees may be held monetarily responsible for such items properly checked out to them with the understanding that such items broken, worn out in normal use, or lost in a manner beyond the control of the employee are excluded.

(*Id.* at **Exhibit A**, p. 33 at § 1618.)

**ARTICLE XVIII, Section 1809.**  Foreman: The selection of the individual who will be craft foreman is at the sole discretion of the Contractor.  When a Contractor employs on

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT

11

his payroll, on a jobsite, eight (8) or more Carpenters, the Contractor shall designate a Carpenter as craft foreman. It is understood that a craft foreman shall be an employee employed under the terms of this Agreement and shall receive the foreman's differential. Such craft foreman may work with the tools of the trade in accordance with the provisions of Paragraph 803. Only craft foremen who normally work with the tools of their trade during straight-time periods may work with the tools of their trade during overtime periods. It is understood that in certain cases, by reason of custom and practice established by the parties, a craft foreman may direct the work and employees of more than one craft. If a dispute arises with respect to the application of this understanding, such dispute shall be determined according to the procedure set forth in Article VI of this Agreement on the basis of such custom and practice. Whenever the Employer assigns supervisory authority to an employee covered by the terms of this agreement, the employee will be paid the foreman's rate.

(*Id.* at **Exhibit A**, p. 42-43 at § 1809.)

**APPENDIX B SPECIAL WORKING RULES FOR MILLWRIGHTS, Section 7. Tools**
(a) … If all or part of the Millwrights' tools and equipment are lost by reason of the failure of the Employer to provide such a secure place or by fire, flood or theft involving forcible entry, the Employer shall reimburse the employee to a maximum of two thousand dollars ($2,000.00) per individual for tools not covered by the employee's insurance. Such reimbursements shall be made within three (3) working days of a written request by the employee ….
(b) The employee shall be compensated for tools specifically modified by the Employer; however, any such modified tool shall become the property of the Employer.

(*Id.* at **Exhibit A**, p. 72 at § 7.)

**APPENDIX B SPECIAL WORKING RULES FOR MILLWRIGHTS, Section 10.** When Millwrights are exposed to unusual conditions such as heat, cold, dust, dangerous fumes or gases, the Contractor shall furnish the necessary safety or protective equipment exclusive of

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT

12

clothing. Where safety or protective equipment cannot possibly be used, there shall be a meeting of the Union and the Contractor to work out a mutually agreeable safety practice. The intent of this paragraph is to exclude inclement weather or acts of God.

(*Id.* at **Exhibit A**, p. 72 at § 10.)

## V.   LEGAL DISCUSSION

Plaintiff pleads eight causes of action, all styled as state law claims involving violations of wage and hour provisions of the California Labor Code, IWC Wage Orders, and Unfair Competition Law ("UCL"). However, the majority of Plaintiff's non-derivative claims, namely his overtime, meal break, rest break and timely payment of wages (Labor Code Section 204) claims, are preempted under Section 301 because such claims are necessarily contractual claims under the CBA; California state law does not apply to such claims because of an express exemption in the Labor Code or Wage Order 16. Plaintiff's derivative claims (for wage statement penalties under Labor Code Section 226, waiting time penalties under Labor Code Section 203, and restitution under the UCL, are preempted under Section 301 because such claims rise or fall based on the underlying substantive (and preempted) overtime, meal break and rest break claims. With regard to Plaintiff's minimum wage and expense reimbursement claims: (i) these claims are also preempted by Section 301 because the resolution of such claims requires interpretation of the CBA; or, in the alternative, (ii) the Court has supplemental jurisdiction over these claims, which form part of the same case or controversy as Plaintiff's preempted claims. Thus, this action is preempted by Section 301, notwithstanding that the Complaint does not mention the CBA.

### A.   The Section 301 Preemption Analysis – Legal Standard

Section 301 completely preempts all claims that are based on, or require the interpretation of, a collective bargaining agreement. *United Steelworkers of America v. Rawson*, 495 U.S. 362, 368–69 (1990); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209–11 (1985); *Associated*

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT                                                            13

*Builders & Contractors, Inc. v. Local 302 International Brotherhood of Electrical Workers*, 109 F.3d 1353, 1356–57 (9th Cir. 1997) (Section 301 is construed "quite broadly to cover most state-law actions that require interpretation of labor agreements").

Section 301 preemption furthers two important federal policies. First, it ensures that the interpretation of collective bargaining agreements remains uniform and independent of state law. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962) (inconsistent interpretations would "inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements"). Second, the complete preemption doctrine gives effect to the parties' mutual promise to resolve disputes through the grievance-arbitration process and furthers the strong federal policy that labor disputes "remain[] firmly in the arbitral realm." *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 411 (1988). This Court has subject matter jurisdiction over—and thus a defendant may properly remove—any ostensible state law claim preempted by Section 301. *Franchise Tax Board v. Construction Laborers*, 463 U.S. 1, 24 (1983); *Allis-Chalmers Corp.*, 471 U.S. at 220 (if preempted, the "claim must either be treated as a § 301 claim ... or dismissed").

Step One. Under the Section 301 preemption analysis, courts must first inquire whether the relief requested by a plaintiff "involves a right [that] exists solely as a result of the CBA." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (internal citations and quotations omitted). Under *Curtis*, where an asserted Labor Code or Wage Order claim is covered by an available CBA exemption – such that there exists no valid underlying state law claim – the Section 301 preemption inquiry is resolved at this first step. This is because, in the case of a state law meal break claim (for example), if Labor Code Section 512(a) does not apply (due to the application of the Labor Code Section 512(e)-(g) CBA exemption), any pleaded meal break claim is necessarily a contractual claim. *See, e.g., Giles v. Canus Corp.*, 2022 WL 3370793, *4-5 (N.D. Cal. Aug. 16, 2022) (applying *Curtis*).

Step Two. If, and only if, there is no preemption found at the first step of the

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT

14

analysis, courts proceed to the second step of the Section 301 preemption analysis, which asks "whether a plaintiff's state law right is substantially dependent on analysis of the CBA." *Curtis*, 913 F.3d at 1153. Under this second step, where there is no applicable CBA exemption, Section 301 preemption still applies if the resolution of a plaintiff's minimum wage claim (for example) requires interpretation of the CBA. *See Mellon v. Universal City Studios, LLC*, __ F. Supp. 3d __, 2022 WL 4021692, at *5 (C.D. Cal. Sep. 2, 2022) (denying motion to remand because "resolution of [plaintiff's] minimum wage claim will require interpreting the CBA to determine whether he was compensated for time spent undergoing security checks through Article 27."); *Giles, supra,* 2022 WL 3370793, *6 (holding minimum wage claim preempted because resolving that claim would require an, interpretation of terms "actual time worked" and "show-up pay" as used in the CBA).

Notably, whether Plaintiff's operative pleading mentions the CBA is not relevant to the Section 301 preemption analysis. *Curtis*, 913 F.3d at 1152; *Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 750 (S.D. Cal. 2021); *Mellon*, 2022 WL 4021692, *2; *Ayon v. Zero Waste Sols., Inc*, 2021 WL 4065716, *3 (E.D. Cal. Sept. 7, 2021).

**B.    Plaintiff's Second Cause Of Action (Overtime) Is Preempted Under *Curtis* Step One.**

In Plaintiff's Second Cause of Action, Plaintiff asserts that Defendant failed to "pay Plaintiff and the Class overtime compensation for the hours they worked in excess of the maximum hours permissible by law as required by California Labor Code § 510 and 1198." (Compl., ¶ 44.)  However, Plaintiff has no state law overtime claim because the Labor Code Section 514 exemption applies.  Section 514 provides an overtime exemption where "an employee is covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT

15

First, the CBA provides for a range of wages, hours and working conditions. (*See* provisions quoted in Sections IV.B.1, IV.B.4, IV.B.5, *supra*.)

Second, the CBA provides premium wage rates for all overtime hours worked. (*See* CBA Sections 1602.3, 1805.)

Third, the CBA provides hourly rates of pay well in excess of 30 percent above the then-current California minimum wage. (*See* Section IV.B.1, *supra*.) The Millwright base rate at the beginning of the CBA in 2016 was $40.90 per hour, and foremen were entitled to at least $3.00 per hour more than that. After several successive wage increases, Plaintiff's base rate of pay per the CBA was in excess of $50.00 per hour, and he typically earned several dollars more than that as a Millwright foreman or general foreman. (Hrovat Decl., ¶ 5.)

Accordingly, the Section 514 overtime exemption, which has been construed and applied capaciously by state and federal courts, clearly applies here. S*ee Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 109 (2014) (where Section 514's requirements are met, an employer is only required to pay for overtime as defined by the collective bargaining agreement and Section 510 simply does not apply); *Curtis*, 913 F.3d at 1154-55 ("While section 510 establishes a default definition of overtime applicable to non-unionized employees, unionized employees 'have sought and received alternative wage protections through the collective bargaining process'") (*citing Vranish*; *quoting Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1067 (9th Cir. 2000)).

Where, as here, the Section 514 exemption applies to a union-represented plaintiff, the "right to overtime 'exists solely as a result of the CBA,' and therefore is preempted under § 301." *Curtis*, 913 F.3d at 1154; *accord, e.g., Giles*, *supra*, 2022 WL 3370793, *4; *Braswell v. AHMC San Gabriel Valley Med. Ctr. LP*, 2022 U.S. Dist. LEXIS 42113, *11 (C.D. Cal. Mar. 8, 2022) ("Because the Defendants' CBAs with the Aggrieved Employees satisfy the requirements of section 514, the right to overtime pay exists solely as a result of the CBA"); *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT

16

3d 1187, 1203-04 (C.D. Cal. 2015) (same).

## C. Plaintiff's Third Cause Of Action (Meal Breaks) Is Preempted Under *Curtis* Step One.

Plaintiff's Third Cause of Action alleges the failure to provide meal breaks under California law.  However, Plaintiff has no state law meal break claims because the Labor Code Section 512(e) exemption applies.  As is relevant here, the Section 512(e) exemption applies because Plaintiff:

(i) was employed in a construction occupation (*see* Section IV.A, *supra*; Labor Code Section 512(f)(1)); and

(ii) was covered by a CBA that

(a) expressly provides for a range of wages, hours and working conditions (*see* Sections IV.B.1, IV.B.4, IV.B.5, *supra*),

(b) expressly provides for meal periods (*see* Section IV.B.2, *supra*)

(c) provides final and binding arbitration of disputes concerning the CBA's meal period provisions (*see* Section IV.B.3, *supra*),

(d) provides premium wage rates for all overtime hours worked (*see* Section IV.B.1, *supra*); and

(e) provides a regular hourly rate of pay in excess of 30 above the California state minimum wage (*see* Section IV.B.1, *supra*).

The meal break CBA exemption in Labor Code Section 512(e) has, like the Section 514 exemption, been construed broadly by the courts.  In the seminal case, *Araquistain v. Pacific Gas & Electric Co.*, 229 Cal. App. 4th 227, 230, 237-38 (2014), the Court of Appeal (affirming the superior court's order), held that the Section 512(e) exemption was met where the underlying CBA simply provided that "shift employees and other employees whose workday consists of eight consecutive hours shall be permitted to eat their meals during work hours and shall not be allowed additional time therefore at Company expense" (i.e., even where the CBA did not provide a precise duration or timing for meal periods).  Where the Section 512(e) exemption is met, the

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO FEDERAL COURT

17

exempted-from state law provision (in this case, meal periods), "as a whole," does not apply. *Id.* at 236.

Further, where, as here, the Section 512(e) exemption applies, a pleaded state law meal period claim is preempted by Section 301. *See Rodriguez v. Gonsalves & Santucci, Inc.*, 2022 WL 161892, *4 (N.D. Cal. Jan. 18, 2022) (*citing Curtis*, 913 F.3d at 1155-56); *accord Giles*, *supra*, 2022 WL 3370793, *4-5; *Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1098 (N.D. Cal. 2014) ("So if Section 512(e) applies, then 512(a) does *not* apply, and plaintiff's claimed right to meal periods cannot be said to be based on state law.") (Emphasis in original).

### D. Plaintiff's Fourth Cause Of Action (Rest Breaks) Is Preempted Under *Curtis* Step One.

Plaintiff's Fourth Cause of Action alleges failure to provide rest breaks under California law. However, Plaintiff has no state law rest break claims because the CBA exemption in Section 11 (Rest Periods) of Wage Order 16 apply. In relevant part, Wage Order 16, Sections 11.D and 11.E, provide as follows: "[11.D] In cases where a valid collective bargaining agreement provides final and binding mechanism for resolving disputes regarding enforcement of the rest period provisions, the collective bargaining agreement will prevail ... [11.E] This section shall not apply to any employee covered by a valid collective bargaining agreement if the collective bargaining agreement provides equivalent protection." Cal. Code Regs., Title 8, Sections 11160(11)(D), 11160(11)(E).

The right to rest breaks (including the timing, duration, and number thereof) is contained in the IWC Wage Orders, not in the Labor Code. Section 904 of the CBA both (i) expressly incorporates all provisions of Wage Order 16 (which includes Plaintiff's right to rest breaks) and (ii) expressly provides that the CBA's final and binding arbitration mechanism applies to all alleged violations of Wage Order 16. Thus, the Section 11.D exemption in Wage Order 16 is met.

Further, there can be no doubt that the CBA provides "equivalent" protection

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT

18

(regarding rest breaks, suitable seating, temperature, etc.) as compared to Wage Order 16, because section 904 of the CBA expressly incorporates Wage Order 16 and thus makes Wage Order 16 the law of the shop. Thus, the Section 11.E exemption in Wage Order 16 is also met.

Where, as here, the Wage Order 16 rest break CBA exemption applies, a pleaded state law rest break claim is preempted by Section 301. *See Rodriguez, supra,* 2022 WL 161892, *4; *Zayerz v. Kiewit Infrastructure W.*, 2018 WL 582318, *4 (C.D. Cal. Jan. 18, 2018).

### E. Plaintiff's Labor Code Section 204 Claim (First Cause Of Action) Is Preempted Under *Curtis* Step One.

Within his First Cause of Action, Plaintiff alleges that PMI violated Labor Code Section 204 by failing to pay all wages due and/or failing to pay wages twice per month. (Compl., ¶ 38.) However, Labor Code Section 204 does not apply "when employees are covered by a collective bargaining agreement that provides different pay arrangements." Lab. Code § 204(c). Thus, as is the case with overtime, meal and rest break claims, California state law wage payment claims under Section 204 are waivable and negotiable as to a union represented employee. *Hall*, *supra*, 146 F. Supp. 3d at 1203-4 (holding Section 204 claim preempted under Section 301 where CBA contained its own pay timing rules).

Here, Section 902 of the CBA requires *weekly* wage payment and provides additional monetary penalties if employees are not paid on a timely basis. Thus, Plaintiff's Section 204 claim is preempted under Section 301. *Hall*, 146 F. Supp. 3d at 1203-04; *accord Bradford v. Prof'l Tech. Sec. Servs.*, 2020 WL 2747767, *5 (N.D. Cal. May 27, 2020) ("Because the CBA here provides for a different pay arrangement than the statute, [plaintiff's] right to timely payment exists solely as a result for the CBA and is preempted.")

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO FEDERAL COURT          19

**F.     Plaintiff's Derivative Waiting Time Penalty, Wage Statement Penalty, And UCL Claims (Sixth, Seventh And Eighth Causes Of Action) Are Preempted Under *Curtis* Step One.**

Plaintiff's Sixth Cause of Action (waiting time penalties under Labor Code Sections 201-203), Seventh Cause of Action (wage statement penalties under Labor Code Section 226), and Eighth Cause of Action (restitution under UCL) are all, in whole or in part, derivative of Plaintiff's claims that are preempted under Section 301 for the reasons described above.  (Compl., ¶¶ 61, 68, 76 [all three derivative claims are based, without differentiation, on all allegations in Paragraphs 1-20 of the Complaint].)

All three derivative claims are preempted under Section 301 for this reason. *Giles*, *supra,* 2022 WL 3370793, *6-7; *Rodriguez*, *supra,* 2022 WL 161892, *6; *Mellon*, *supra,* 2022 WL 4021692, *5; *Jimenez v. Young's Mkt. C*o., 2021 WL 5999082, *13 (N.D. Cal. Dec. 20, 2021); *Vasquez v. Packaging Corp. of Am*., 2019 WL 4543106, *4 (C.D. Cal. Jun. 7, 2019).

Notably, Plaintiff's Sixth and Seventh Causes of Action would be preempted under Section 301 in any event, under Step Two of the *Curtis* analysis, because such claims require the interpretation and application of detailed provisions regarding the timely payment of wages to both current and departing employees (including penalties for late payments) in Sections 902, 902.2, and 902.3 of the CBA. *See Curtis*, 913 F.3d at 1153.  But the Step Two analysis is unnecessary where, as here, preemption under Step One is so clear.

**G.     The Remainder Of Plaintiff's First Cause Of Action (Minimum Wages) Is Preempted Under *Curtis* Step One Or Step Two.**

As discussed above, the Labor Code Section 204 claim within Plaintiff's First Cause of Action is preempted under *Curtis* Step One because of the presence of a CBA exemption under Labor Code Section 204(c). The remainder of Plaintiff's First Cause of Action is preempted for the following reasons.

Plaintiff alleges that he was "typically scheduled to work at least 5 days in a workweek, and typically in excess of 8 hours in a single workday." (Compl., ¶ 13.)

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT

20

Plaintiff does not allege that he ever worked *or was scheduled for* a single day as to which overtime obligations would not attach (if Plaintiff had worked more time than that for which he was paid); *e.g.*, Plaintiff does not allege that he ever worked only 7 hours in a day or only 35 hours in a week. (Compl., *passim*.)

Plaintiff alleges that PMI used "a system of time rounding in a manner that resulted, over a period of time, in failing to compensate Plaintiff and the Class properly for all the time they have actually worked, even though the realities of Defendant's operations are such that it is possible, practical, and feasible to count and pay for work time to the minute." (Compl., ¶ 15.) Further, Plaintiff claims he was

> required to work off-the-clock, in that Defendants paid Plaintiff and the Class based on their schedules, as opposed to actual time worked. Plaintiff and the Class regularly arrived early in order to sign in at the security gate when entering the parking area, putting on safety gear, and preparing for the day's work. However, Plaintiff and the Class were not paid until the scheduled shift started. As a result, Defendants frequently paid Plaintiff and the Class less than all their work time, some of which should have been paid at the overtime rate. Additionally, Plaintiff and the Class were occasionally required to drive company trucks to various locations and gas stations while off-the-clock.

(*Id.*) These are the only factual allegations supporting Plaintiff's First Cause of Action. (*See id.*, ¶¶ 30-39.)

Collectively, the claims in Paragraphs 13 and 15 of the Complaint and the lack of any additional supporting detail in the First Cause of Action, make it clear that Plaintiff's so-called "minimum wage" claims are in fact overtime claims. After all, as alleged, Plaintiff was *scheduled* to work 8 or more hours each workday and *was* paid for his scheduled hours. Therefore, all allegedly unpaid time *in excess of* Plaintiff's scheduled hours would be overtime hours; and Plaintiff's overtime claims are preempted by Section 301 for the reasons described above. Plaintiff's First Cause of Action, lacking any independent life, is preempted for the same reason.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT

21

In the alternative, Plaintiff's First Cause of Action is preempted because interpretation of the various provisions of the CBA requiring pay for all hours worked is require to resolve the minimum wage claim. *See Rodriguez*, *supra*, 2022 WL 161892, *5 (finding, where plaintiff alleged "defendant failed to pay minimum wages for off-the-clock activity," resolution of minimum wage claim required, "[a]t minimum, ... interpretation of CBA terms such as 'actual hours worked' and 'show up expenses'"); *Giles*, *supra,* 2022 WL 3370793, *6; *Mellon*, *supra,* 2022 WL 4021692, *5.

In any event, if the Court finds that any portion of Plaintiff's First Cause of Action is not preempted, the Court has supplemental jurisdiction because any non-preempted claims form part of the same case or controversy as the preempted claims. *See Giles*, 2022 WL 3370793, *6 (court exercised supplemental jurisdiction over *non*-preempted rest break claim by non-construction industry plaintiff, where overtime, meal break and minimum wage claims were preempted by Section 301).

### H.   Plaintiff's Fifth Cause Of Action (Expense Reimbursement) Is Preempted Under *Curtis* Step Two.

In support of his Fifth Cause of Action under Labor Code Section 2802, Plaintiff alleges that PMI required him to "pay expenses ... incurred in direct discharge of [his] duties ... without reimbursement." (Compl., ¶ 18.)  That's it.  The body of the Fifth Cause of Action adds no supporting detail.  (*See id.* ¶¶ 57-60.)  Earlier, Plaintiff mentions "safety gear" (*id.* ¶ 15), but Plaintiff does not allege that PMI required Plaintiff to pay for his own safety gear.  Likewise, Plaintiff references driving company vehicles to gas stations (*id.*), but does not allege that PMI required Plaintiff to pull out his personal credit card to refuel any PMI vehicle.  So, the reader is left to guess at what type of unreimbursed expense (if any) Plaintiff's Fifth Cause of Action is referring to.

If Plaintiff's expense reimbursement claim does relate to safety gear, that claim is specifically addressed by Section 1618 of the CBA, and Section 10 of the Millwright-specific Appendix B.  If Plaintiff's expense reimbursement claim relates to tools, that claim is also specifically addressed by Sections 1615, 1615.1, and Section 7 of

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT

22

Appendix B to the CBA.  Accordingly, assuming that Plaintiff is eventually able to state a claim for expense reimbursement, the CBA specifically addresses expense reimbursement in several provisions and thus Section 301 preemption applies because the CBA must be interpreted to resolve the claim.  *See Rodriguez*, *supra*, 2022 WL 161892, * 9 (Section 2802 claim preempted because the resolution thereof "turns on the analysis of the CBA and interpretation of its terms").  In the alternative, as illustrated by the absence of any specific or independent allegations regarding unreimbursed expenses, this Court has supplemental jurisdiction over Plaintiff's Fifth Cause of Action.

## VI.    CONCLUSION

For the reasons provided herein, Defendant hereby removes this action from the California Superior Court, in and for the County of Los Angeles, to the United States District Court, Central District of California.  Defendant requests that this Court retain jurisdiction for all further proceedings.

Dated:         October 28, 2022

LITTLER MENDELSON, P.C.

*/s/ Heather Lanyi*
Joshua D. Kienitz
Heather Lanyi

Attorneys for Defendant
Performance Mechanical, Inc.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

4886-4697-0937.7 / 087584-1011

NOTICE OF REMOVAL TO
FEDERAL COURT

23